IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ELAINE G. FARNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:06cv513-ID |
| | )             (WO) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Shirley M. Ledford's ("Ms. Ledford") motion for summary judgment, which is accompanied by evidence and a brief. (Doc. No. 30.) Plaintiff Elaine G. Farner ("Ms. Farner") filed a response in opposition, but submitted no evidence. (Doc. No. 34.) After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Ms. Ledford's motion for summary judgment is due to be granted.

**I.  JURISDICTION**

In a prior memorandum opinion and order entered in this case, the court found that it properly exercises subject matter jurisdiction over this action, pursuant to 38 U.S.C. § 1984.  In so finding, the court denied Ms. Ledford's motion to dismiss and rejected Ms. Ledford's argument that Ms. Farner did not timely file her lawsuit in accordance with the ninety-day period prescribed in 38 U.S.C. § 1984(b). (Mem. Op. & Order (Doc. No. 13).)  Personal jurisdiction and venue are adequately pleaded and not contested.

## II.  STANDARD OF REVIEW

A court considering a motion for summary judgment must construe the evidence and make factual inferences in the light most favorable to the nonmoving party.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citations omitted).

Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing that there is no dispute of material fact or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Id. at 322-23, 325.  The burden then shifts to the nonmoving party, which "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Summary judgment will not be entered unless the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.  See id. at 587.

### III.  BACKGROUND

This lawsuit involves a dispute over the distribution of the proceeds of a United States Government life insurance policy ("Policy") belonging to Fred H. Farner ("Mr. Farner"), a deceased U.S. Armed Forces veteran.  The Policy is administered by the U.S. Department of Veteran Affairs ("V.A.").  On July 31, 1985, Mr. Farner, who at the time was married to Ms. Farner, designated Ms. Farner as the beneficiary of the proceeds of the Policy.  Approximately seven years after the Farners divorced, specifically on May 24, 2003, Mr. Farner changed the beneficiary to Ms. Ledford, who is a Defendant in this litigation.[1]  Three weeks later, on June 13, 2003, Mr. Farner died.

On June 8, 2006, Ms. Farner filed the instant complaint, seeking a determination of "whether or not [Mr. Farner's] designation of beneficiary dated May 24, 2003 was invalid due to lack of mental capacity."  (Compl. at 4.)  In addition to suing Ms. Ledford, Ms. Farner sues the "United States of America," which she says, at all pertinent times, acted through the V.A.  (Id. at 1.)  Responding to Ms. Farner's complaint, the United States filed an interpleader counterclaim.  In its counterclaim, the United States "admits liability under the Policy of insurance and is ready and willing to pay the proceeds to the party lawfully entitled thereto," but says that, "because of the conflicting claims of [Ms.] Farner and [Ms.] Ledford[,] it cannot safely make payment without the aid of this Court."  (Counterclaim at 5.)  As relief, the United States requests that the court "adjudge whether [Ms.] Farner or [Ms. Ledford], or either of them, is entitled to receive the death benefits of the policy of insurance and direct payment of such policy proceeds to the person found

---

[1] Mr. Farner effectuated the change by executing VA Form 29-336b (Designation of Beneficiary).  (See Compl. ¶ 8.)

by the Court to be entitled thereto." (Id.)  Furthermore, the United States requests the court to "discharge" it "from any and all liability in the premises, except to the person adjudged entitled to receive the proceeds of the policy." (Id. at 6.)

After she filed her answer, Ms. Ledford moved for summary judgment.  In support of her motion, Ms. Ledford submitted affidavits from three witnesses who describe their observations of Mr. Farner's mental competence during the period of time during which he changed the Policy's beneficiary from Ms. Farner to Ms. Ledford.  (See Affidavits attached to Ms. Ledford Summ. J. Br. (Doc. No. 30).)  One of the affiants is Anthony Livingston ("Mr. Livingston"), an attorney who in May 2003 prepared legal documents for Mr. Farner, including a revised will.[2]  Prior to Mr. Farner executing his new will, Mr. Livingston asked Mr. Farner questions specifically tailored to ascertain Mr. Farner's "mental acuity." (Livingston Aff. at 1.)  Although Mr. Livingston observed that Mr. Farner was "very sick and in pain," he determined that Mr. Farner "was of sound mind and knew exactly what he was doing" when he executed his new will and other legal documents.  (Id.)  Among other things, Mr. Farner told Mr. Livingston that "he did not want [his former spouse] to get anything."  (Id.)

The second affidavit is from Mr. Livingston's legal secretary, Joann Toothman ("Ms. Toothman"), who alongside Mr. Livingston witnessed Mr. Farner execute his new will.  Ms. Toothman's attestations that Mr. Farner "was very mentally aware of his surrounding circumstances" mirror those of Mr. Livingston's.  (Toothman Aff. at 1.)  Ms. Toothman also attests that Ms. Ledford was not present when Mr. Farner executed his

---

[2] Mr. Livingston did not assist Mr. Farner change his beneficiary for the Policy at issue, but execution of the change-of-beneficiary form occurred during the same time frame that Mr. Farner changed his will.

new will and other legal documents. (Id.) The third affidavit is from Mr. Farner's sister, who at the time lived in Illinois, but who stayed in "constant contact with [Mr. Farner] via telephone." (Imogene Blomberg Aff. at 1.) Ms. Blomberg attests that she and Mr. Farner "converse[d] on a variety of subjects," including "home repair, . . . politics, mutual friends, childhood memories, baseball, *etc*." (Id.) She says that she talked to Mr. Farner "a day or two" prior to his death and that, during all of their conversations, her brother was "lucid, coherent and rational." (Id.)

The court entered an order directing Ms. Farner to respond to Ms. Ledford's motion for summary judgment. (See Order (Doc. No. 31).) For the reasons set out in an affidavit by Ms. Farner's counsel, the court granted Ms. Farner an extension of time to respond to the motion. (See Order (Doc. No. 33).) That deadline has passed, and counsel for Ms. Farner has informed the court that he is unable to file any evidence in opposition because of Ms. Farner's continued unavailability. (Ms. Farner Summ. J. Resp. at 1 (Doc. No. 34).) No timetable, however, has been offered by counsel as to when, if ever, his client might be available to prosecute the action which she filed. Under the circumstances of this case, the court finds that further delay is not warranted.

## IV.  DISCUSSION

38 U.S.C. § 1984(a) provides that, "[i]n the event of disagreement as to claim" under contract of National Service Life Insurance or U.S. Government life insurance, any person who "claim[s] thereunder an action on the claim may" bring suit against the United States in the district court of the United States, and "[a]ll persons having or claiming to have an interest in such insurance may be made parties to such suit[.]"  Ms.

Ledford and Ms. Farner are the only two individuals who have made a claim to the proceeds of the Policy.

The issue for determination is who is entitled to receive the death benefits of Mr. Farner's Policy. The contest is between Ms. Farner and Ms. Ledford.[3] At the summary judgment juncture, resolution of this issue requires the court to determine whether Ms. Ledford has presented evidence showing that there is no dispute of material fact that on May 24, 2003, Mr. Farner possessed the requisite testamentary capacity to change his Policy beneficiary from Ms. Farner to Ms. Ledford.[4]

In different contexts, courts have concluded that federal law governs the question of who is to receive the proceeds of an insurance policy issued by the United States

---

[3] The United States also is a party, but, because it acknowledges its liability for the payment of the Policy proceeds, the United States' position is considered merely that of a stakeholder. See Baker v. United States, 386 F.2d 356, 356 n.1 (5th Cir. 1967). Additionally, the court notes that, while the Policy proceeds have not been deposited with the court, the United States represents that the V.A. Regional Office of Insurance Center "retains possession" of the proceeds. (Counterclaim at 5.) Where as here the United States is acting as a stakeholder, but the funds are not deposited in the court, the court may grant judgment against the United States, directing it to pay the funds to the prevailing party. See 6 C.J.S. Armed Services § 279 (2008) (citing Glaser v. Hester, 266 F.2d 394 (9th Cir. 1958)).

[4] The court notes that, while Ms. Ledford correctly states the law governing the summary judgment procedure, she urges the court to apply a "higher" standard of review and give "great weight" to the V.A.'s determination that she is the lawful designated beneficiary under Mr. Farner's Policy. (Ms. Ledford Summ. J. Br. at 3.) There is authority contrary to Ms. Ledford's position. See Phillips v. United States, 332 F. Supp. 601, 604 (S.D. Miss. 1970) (interpreting 38 U.S.C. § 784(a) – the predecessor statute to 38 U.S.C. § 1984), aff'd, 440 F.2d 993 (5th Cir. 1971); see also 6 C.J.S. Armed Services § 253 (2008); 33 Fed. Proc., L. Ed. § 79:313. Contrary authority aside, even applying the summary judgment standard without according any deference to the V.A.'s decision, as the court has done in this case, the court reaches the conclusion which Ms. Ledford urges. It can be said then that Ms. Ledford's argument is immaterial based on the outcome of this case.

government.  See Rice v. Office of Servicemembers' Group Life Ins., 260 F.3d 1240, 1246 (10th Cir. 2001) (holding that "federal law govern[ed] the issues of mental capacity and undue influence" when determining whether military service member's change of beneficiary under his Servicemembers' Group Life Insurance policy was invalid); United States v. Donall, 466 F.2d 1246, 1247 (6th Cir. 1972) ("It is well established that questions respecting the proper beneficiaries under NSLI [National Service Life Insurance] policies are governed by federal law."); Wolfe v. Gober, 11 Vet. App. 1 (Vet. App. 1997) (terms of NSLI contract construed by federal law).  The court finds that the Policy at issue in this case is sufficiently analogous to those discussed in the foregoing authorities so as to warrant application of federal law to resolve the issue of mental capacity in this case.  See, e.g., 38 U.S.C. § 1984 (governing contracts under both NSLI and U.S. Government life insurance).  No argument to the contrary has been advanced.

Concerning the considerations applicable to determining a veteran's testamentary capacity to execute a change of beneficiary, the court finds that 38 C.F.R. § 3.355 is instructive.[5]  This V.A. regulation, which is titled "Testamentary Capacity for Insurance Purposes," defines testamentary capacity as follows:

> (a)  Testamentary capacity is that degree of mental capacity necessary to enable a person to perform a testamentary act.  This, in general, requires that the testator reasonably comprehend the nature and significance of his act, that is, the subject and extent of his disposition, recognition of the object of his bounty, and appreciation of the consequence of his act, uninfluenced by any material delusion as to the property or persons involved.

---

[5] Admittedly, Ms. Ledford's brief is not helpful for discerning the relevant legal standards to apply.

> (b)  Due consideration should be given to all facts of record, with emphasis being placed on those facts bearing upon the mental condition of the testator (insured) at the time or nearest the time he executed the designation or change.  In this connection, consideration should be given to lay as well as medical evidence.
>
> (c)  Lack of testamentary capacity should not be confused with insanity or mental incompetence.  An insane person might have a lucid interval during which he would possess testamentary capacity.  On the other hand, a sane person might suffer a temporary mental aberration during which he would not possess testamentary capacity.  There is a general but rebuttable presumption that every testator possesses testamentary capacity.  Therefore, reasonable doubts should be resolved in favor of testamentary capacity.

38 C.F.R. § 3.355.

Having reviewed Ms. Ledford's evidence, the court finds that Ms. Ledford has demonstrated by competent lay evidence that, on May 24, 2003, the date Mr. Farner changed his beneficiary from Ms. Farner to Ms. Ledford, Mr. Farner reasonably understood the nature and significance of what he was doing concerning the distribution of his Policy proceeds upon his death.  Namely, providing specific examples of their interactions with Mr. Farner, the affiants testify that, during May 2003, Mr. Farner "was of sound mind and knew exactly what he was doing" concerning the bequeathment of his property (Mr. Livingston Aff. at 1), "was very mentally aware of his surrounding circumstances," (Ms. Toothman Aff. at 1), and was "lucid, coherent and rational."  (Ms. Blomberg Aff. at 1.)

The court further finds that Ms. Ledford has shown that Mr. Farner recognized that he was designating Ms. Ledford as the Policy beneficiary in lieu of Ms. Farner and that he was well aware that he was depriving Ms. Farner of any of the Policy benefits. Indeed, the evidence establishes that Mr. Farner expressly pronounced that he did not

want Ms. Farner, his ex-spouse, to "get anything" from him. (Mr. Livingston Aff. at 1.) Mr. Farner's act of changing the beneficiary, thus, conforms with his articulated intent. Moreover, the court concludes that Ms. Ledford has demonstrated that Mr. Farner was not influenced by any material delusion in changing the beneficiary of his Policy.

Based on the foregoing, the court finds that Ms. Ledford has presented evidence showing that there is no dispute of material fact that on May 24, 2003, Mr. Farner possessed the requisite testamentary capacity to change his Policy beneficiary from Ms. Farner to Ms. Ledford.[6] The court, therefore, finds that Ms. Ledford is the lawful beneficiary. Accordingly, the court finds that summary judgment is due to be entered in favor of Ms. Ledford.

## V.  ORDER

Accordingly, it is CONSIDERED and ORDERED that Ms. Ledford's motion for summary judgment be and the same is hereby GRANTED.

Prior to entering final judgment, the court will hear from Ms. Ledford concerning a reasonable attorney's fee in this case. See 38 U.S.C. § 1984(g) ("[T]he court, as a part of its judgment or decree, shall determine and allow reasonable fees for the attorneys of the successful party . . ., said fees not to exceed 10 per centum of the amount recovered[.]"). Ms. Ledford's brief and evidence in support of a reasonable attorney's fee shall be filed no later than April 29, 2008.

DONE this 22nd day of April, 2008.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] As stated, Ms. Farner has not provided *any* evidence in opposition to Ms. Ledford's motion for summary judgment.